## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### MIAMI DIVISION

| | |
|---|---|
| **GENESIS COIN, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **AML SOFTWARE, INC.,** | ) |
| **S AND P SOLUTIONS, LLC d/b/a** | ) |
| **BITCOIN OF AMERICA,** | ) |
| **SILVERLOGIC LLC,** | ) |
| **RYAN PINEO, and** | ) |
| **SONNY MERABAN,** | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

### COMPLAINT

Plaintiff, GENESIS COIN, INC., a Florida corporation (hereinafter "Plaintiff"), by and through undersigned counsel, hereby files this Complaint against Defendants, AML SOFTWARE, INC. ("AML"), S AND P SOLUTIONS, LLC d/b/a BITCOIN OF AMERICA ("S&P"), SILVERLOGIC LLC ("Silverlogic"), RYAN PINEO, and SONNY MERABAN (hereinafter collectively "Defendants") and alleges as follows:

### NATURE OF THE ACTION

1.      This is an action for injunctive and other relief under the Copyright Act and at common law, including claims for direct and contributory copyright infringement under federal law, tortious interference with a business relationship under Florida law, and civil conspiracy under Florida law.

2.      This lawsuit arises from Defendants' unauthorized use, unauthorized access to, and willful infringement of Plaintiff's Bitcoin automated teller machine (ATM) software/computer

code that is registered as a copyright under the Copyright Act.

3.     Plaintiff seeks a permanent injunction to prevent Defendants' continued unauthorized use and willful infringement of Plaintiff's Bitcoin ATM software/computer code, as well as all other damages and available relief provided for by law and in equity.

## THE PARTIES

4.     Plaintiff is a corporation duly organized and existing under the laws of the State of Florida, located and doing business at 1541 Sunset Drive, Suite 202, Coral Gables, FL 33143.

5.     Defendant AML is a corporation organized and existing under the laws of the State of Illinois, with a principal address listed as 1902 Ogden Avenue, Lisle, IL 60532.

6.     Defendant S&P, doing business as Bitcoin of America, has an address of 1902 Ogden Avenue, Lisle, IL 60532

7.     Defendant Silverlogic is a limited liability company organized and existing under the laws of the State of Florida, located and doing business at 6413 Congress Avenue, Suite 130, Boca Raton, FL 33487.

8.     Upon information and belief, Defendant Ryan Pineo is the President and Secretary of Defendant AML, has the capacity to control the acts of Defendant AML, has the ability to supervise the acts of unauthorized use, unauthorized access, and infringement committed by Defendant AML, has induced, caused, and/or is a motivating force behind the unauthorized use, unauthorized access, and/or infringing activity set forth herein; and has a financial interest in and/or actually participated in the aforementioned unauthorized use, unauthorized access, and/or infringing activity.

9.     Upon information and belief, Defendant Ryan Pineo was a Software Engineer,

Consultant, and/or Chief Technology Officer of Defendant Silverlogic, had the capacity to control the acts of Defendant Silverlogic, and had the ability to supervise the acts of unauthorized use, unauthorized access, and infringement alleged against Defendant Silverlogic, has induced, caused, and/or is a motivating force behind the unauthorized use, unauthorized access, and/or infringing activity set forth herein; and has a financial interest in and/or actually participated in the aforementioned unauthorized use, unauthorized access, and/or infringing activity.

10.    Upon information and belief, Defendant Sonny Meraban has the capacity to control the acts of Defendant AML, has the ability to supervise the acts of unauthorized use, unauthorized access, and infringement committed by Defendant AML, has induced, caused, and/or is a motivating force behind the unauthorized use, unauthorized access, and/or infringing activity set forth herein, and has a financial interest in and/or actually participated in the aforementioned unauthorized use, unauthorized access, and/or infringing activity.

11.    Upon information and belief, Defendant Sonny Meraban was a Chief Executive Officer of Defendant S&P, had the capacity to control the acts of Defendant S&P, and had the ability to supervise the acts of unauthorized use, unauthorized access, and infringement committed by Defendant S&P, has induced, caused, and/or is a motivating force behind the unauthorized use, unauthorized access, and/or infringing activity set forth herein, and has a financial interest in and/or actually participated in the aforementioned unauthorized use, unauthorized access, and/or infringing activity.

## JURISDICTION

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1338(b), because this action arises, at least in part from Plaintiff's claim that Defendants are infringing Plaintiff's registered copyright.

13.     The Court has also supplemental jurisdiction, as set forth in 28 U.S.C. § 1367.

14.     Defendants are subject to personal jurisdiction in Florida and in this District by virtue of at least the following:

    a.     This action arises from, *inter alia*, acts that occurred within this State, and the Southern District of Florida, specifically Defendants' commission of tortious acts, including the infringement set forth herein, within the meaning of Fla. Stat. § 48.193(1)(a). This includes causing injury to the property of Plaintiff within this State, and the Southern District of Florida, namely Plaintiff's registered work as set forth herein, arising out of acts or omissions by the Defendants while, at or about the time of the injury, the Defendants were engaged in solicitation or service activities within this State, and the Southern District of Florida, within the meaning of Fla. Stat. § 48.193(1).

    b.     Defendants: (a) operate, conduct, engage in, or carry on a business or business venture in this State, and the Southern District of Florida, within the meaning of Fla. Stat. § 48.193(1)(a); and (b) are engaged in substantial and not isolated activity within this State, and the Southern District of Florida, within the meaning of Fla. Stat. §48.193(2).

    c.     Defendant Silverlogic has its principal place of business in the State of Florida and in this District.

    d.     Defendants AML, S&P, Ryan Pineo and Sonny Meraban engaged in a civil

4

conspiracy with other Defendants that are subject to the personal jurisdiction of this Court.

## VENUE

15.     Venue is proper under 28 U.S.C. § 1391(b) in that a substantial part of property that is the subject of the action is situated in the Southern District of Florida. Furthermore, Defendants market and advertise the infringing work in the Southern District of Florida, and do business in the Southern District of Florida.

16.     Venue is proper under 28 U.S.C. § 1391(c) in that the Defendants' contacts are sufficient to subject them to personal jurisdiction in the Southern District of Florida, for the reasons set forth above in paragraph 14 above, and its subparts.

## FACTUAL BACKGROUND and GENERAL ALLEGATIONS

17.     Plaintiff, Genesis Coin, Inc., is a provider and licensor of Bitcoin automated teller machines (ATMs) and associated software, located in Coral Gables, Florida.

18.     Plaintiff is a premier provider of Bitcoin ATMs and associated software in the United States, and a leader in the Bitcoin and cryptocurrency ATM market.

19.     For over ten (10) years, Plaintiff has offered Bitcoin ATMs and associated software to consumers and licensees.

20.     Plaintiff offers Bitcoin ATMs with proprietary software/computer code for sale and for licensing.

21.     Plaintiff began developing its own proprietary software/computer code for use on Bitcoin ATMs in early 2013.

22.     Plaintiff offered its own proprietary software/computer code for use on Plaintiff's own Bitcoin ATMs and/or third-party developed Bitcoin ATMs as early as May 1, 2013.

23.     Plaintiff's Bitcoin ATMs and proprietary software/computer code comprises a function that notifies Plaintiff should a consumer, user, licensor, and/or third-party attempt to access, manipulate, and/or inspect the Plaintiff's proprietary software/computer code.

24.     Plaintiff's Bitcoin ATMs and Plaintiff's proprietary software/computer code comprises distinct styling and coloring, including distinct features of the ATMs' graphical user interface, including styling, colorways, button placement, and graphics placement (as set forth in detail below).

25.     On or around June 30, 2015, Defendants Sonny Meraban and the predecessor company of S&P entered into a business relationship with Plaintiff for the purchase and licensing of Plaintiff's Bitcoin ATMs and proprietary software/computer code.

26.     In 2019, the predecessor company of S&P renamed and/or restructured itself to become S&P.

27.     On April 18, 2019, Defendant S&P, at the direction of Defendant Sonny Meraban, contracted with Plaintiff for a license to use Plaintiff's proprietary software/computer code to continue the ongoing business relationship that Defendants Sonny Meraban and the predecessor company of S&P entered into on or around June 30, 2015.

28.     Beginning in 2018, Defendants Sonny Meraban and S&P (or its predecessor) hired Defendants Ryan Pineo and Silverlogic, LLC to manage the Bitcoin ATMs that were purchased by Defendants Sonny Meraban and S&P (or its predecessors), which included setting up, updating, and/or using Plaintiff's proprietary software/computer code (which was licensed to Defendants Sonny Meraban and S&P or its predecessors at the time).

29.     From December 2018 until June 2021, Plaintiff provided customer support to

Defendants Sonny Meraban and S&P (or its predecessors), including coordination with Ryan Pineo, and Silverlogic, for Plaintiff's Bitcoin ATMs and proprietary software/computer code.

30.     Plaintiff later discovered that the Defendant AML was offering bitcoin ATM machines that were substantially similar to Plaintiff's and, upon information and belief, included copies of Plaintiff's proprietary software/computer code.

31.     Upon information and belief, Defendants Sonny Meraban and Ryan Pineo formed Defendant AML to offer products and services that compete with Plaintiff.

### PLAINTIFF'S COPYRIGHT

32.     Plaintiff is the owner of U.S. Copyright Registration TX 9-334-430, titled "Identifying Phrase: Program for Cryptocurrency/Bitcoin Automated Teller Machine," for Plaintiff's proprietary software/computer code (hereinafter, "Plaintiff's Registered Work." Attached in Exhibit A is a non-certified copy of the Registration Certificate for Plaintiff's Registered Work.

33.     Plaintiff owns all rights, title, and interest in Plaintiff's Registered Work.

34.     As described above, Plaintiff's Bitcoin ATMs and Plaintiff's Registered Work produces and comprises distinct styling and coloring, comprising of distinct features of the ATMs' graphical user interface, including, but not limited to: (a) placement of a Bitcoin ATM service provider logo in the top left corner of the user interface; (b) placement of tiered pricing in the top right corner of the user interface; (c) a "Buy Bitcoin" screen comprising three distinct options of: (1) "Scan Wallet QR Code;" (2) "Create New Wallet;" (3) "Enter Address; " and associated graphics; (d)   a "How much would you like to buy today" screen comprising three tiered, light blue color boxes indicating values of purchase amounts; (e) a "Select a Coin" screen comprising

the ability to select from Bitcoin, Litecoin, and Ethereum, including each coins' respective logos;

(f) a "New Wallet Created!" screen comprising instructions and an example of stacked QR codes

as would be depicted on a screen/in a graphic.   Examples of features of what Plaintiff's Registered

Work produces on a screen are depicted below:







35.     In its over-a-decade existence, Plaintiff's Bitcoin ATMs and associated proprietary software/computer code, including Plaintiff's Registered Work therein have reached nationwide recognition and distribution channels, all attributable to the resounding commercial success of Plaintiff and its Bitcoin ATMs and associated proprietary software/computer code.

## DEFENDANTS' UNLAWFUL ACTIVITIES

36.     Upon information and belief, Defendants Sonny Meraban, S&P, Ryan Pineo, and Silverlogic, conspired and agreed to copy Plaintiff's Registered Work in order to cease relying on Plaintiff as a provider and licensor of Plaintiff's Bitcoin ATMs and/or Plaintiff's Registered Work.

37.     Upon information and belief, Defendants Sonny Meraban, S&P, Ryan Pineo, and Silverlogic, conspired and agreed to copy Plaintiff's Registered Work to compete with Plaintiff as a seller and/or licensor of bitcoin ATM machines with copies of Plaintiff's Registered Work and/or to compete with Plaintiff as a seller and/or licensor of copies of Plaintiff's Registered Work.

38.     Upon information and belief, at the direction of Defendants Sonny Meraban and S&P, Defendants Ryan Pineo and Silverlogic attempted to access, manipulate, and/or inspect Plaintiff's Registered Work.

39.     The attempt to access, manipulate, and/or inspect Plaintiff's Registered Work, was undertaken despite Defendants S&P and Sonny Meraban's acknowledgement that Plaintiff's Registered Work is Plaintiff's property and that written consent from Plaintiff was required for any attempt to modify, decompile, duplicate, or otherwise change the software/computer code prior to doing so.

40.     Upon information and belief, Defendants S&P, Ryan Pineo, and Silverlogic were successful in their attempts to access Plaintiff's Registered Work and did access, manipulate,

and/or inspect Plaintiff's Plaintiff's Registered Work. Upon information and belief, at the direction of Defendants Sonny Meraban and S&P, Defendants Ryan Pineo and Silverlogic copied and cloned Plaintiff's Registered Work (so as to produce the "Infringing Work").

41.     Upon information and belief, Defendant S&P then claimed ownership of the Infringing Work.

42.     Upon information and belief, Defendant S&P then sold or licensed, and may continue to sell and license, copies of Plaintiff's Registered Work as the Infringing Work to Defendant AML (and/or other third parties), with the Infringing Work producing a user interface with near-identical features to Plaintiff's Registered Work, including styling, colorways, button placement, and graphics placement.

43.     Alternatively, upon information and belief, Defendant S&P then transferred claimed rights in copies of Plaintiff's Registered Work (the Infringing Work) to Defendant AML, with the Infringing Work producing a user interface with near-identical features to Plaintiff's Registered Work, including styling, colorways, button placement, and graphics placement.

44.     Thereafter, Defendant AML began unlawfully selling and/or licensing Bitcoin ATMs and the associated Infringing Work (not licensed by Plaintiff) in commerce with a user interface with near-identical features to Plaintiff's Registered Work, including styling, colorways, button placement, and graphics placement.

45.     Upon information and belief Defendant AML is operating at the direction of Defendants S&P, Ryan Pineo, and Sonny Meraban.

46.     Below are scaled, side-by-side depictions of Plaintiff's Bitcoin ATMs and Plaintiff's Registered Work and Defendant AML Software, Inc.'s and/or Defendant S&P's Bitcoin

ATMs running, upon information and belief, a cloned/copied version of Plaintiff's Registered Work (as the Infringing Work) that either Defendant AML, Defendant S&P, or both, claim as their own.

**Plaintiff's Registered Work**                    **Infringing Work**

  

**Plaintiff's Registered Work**                    **Infringing Work**

  

11

**Plaintiff's Registered Work**                     **Infringing Work**

 

**Plaintiff's Registered Work**                     **Infringing Work**

 

47.     Upon information and belief, the software/computer code on the Bitcoin ATMs that

12

are sold by Defendants AML, and/or S&P, is a copy of Plaintiff's registered work.

48.     Upon information and belief, Defendants AML and/or S&P sold, sell, licensed, and/or license copies of Plaintiff's Registered Work, as the Infringing Work, including in the Southern District of Florida, in connection with, *inter alia*, Bitcoin ATMs and software/computer code for processing transactions on Bitcoin ATMs.

49.     Defendants AML and S&P sold, sells, licensed, and/or licenses Bitcoin ATMs and the associated Infringing Work (not licensed by Plaintiff), including in the Southern District of Florida, with a user interface with near-identical features to Plaintiff's Registered Work, including styling, colorways, button placement, and graphics placement.

50.     Defendants AML and S&P, sold, sells, licensed, and/or licenses Bitcoin ATMs or the associated Infringing Work to at least two of Plaintiff's licensees, HODL ATM, LLC and CRYPTOBASE LLC, despite having knowledge that the two licensees were licensees of Plaintiff at the time Defendants sold or licensed Bitcoin ATMS or the associated Infringing Work to Plaintiff's former licensees.

51.     Plaintiff licenses its Registered Work to other customers, such as HODL ATM, LLC and CRYPTOBASE LLC and has agreements with these customers.

52.     Defendants AML and/or S&P were aware of the existing business relationship between Plaintiff and HODL ATM, LLC and CRYPTOBASE LLC.

53.     Upon information and belief, Defendants AML and/or S&P improperly induced HODL ATM, LLC and CRYPTOBASE LLC to terminate their agreements with Plaintiff in favor of establishing new business relationships with Defendants AML and/or S&P.

54.     The user interface of the Bitcoin ATMs sold by Defendants AML and/or S&P,

produced by the Infringing Work have near-identical features produced by Plaintiff's Registered Work, including styling, colorways, button placement, and graphics placement.

55.     The Bitcoin ATMs or associated Infringing Work Defendants AML and/or S&P attempt to sell and/or license have a user interface with near-identical features to Plaintiff's Registered Work, including styling, colorways, button placement, and graphics placement.

56.     Defendants' S&P and AML's unauthorized and infringing use of Plaintiff's Registered Work (that Defendants claim as their own as the Infringing Work) is substantially similar to Plaintiff's Registered Work in that the Infringing Work Defendants sold, sells, licensed, and/or licenses comprises the same or highly similar features.

57.     The acts of all Defendants have been willful, by virtue of at least their knowledge of the Plaintiff's rights in and to the Plaintiff's property, including the Plaintiff's Registered Work, and by virtue of the Defendants' business relationships with Plaintiff.

58.     The Defendants' acts complained of herein were and are in total disregard of Plaintiff's rights and were commenced, and it is believed will continue, in spite of the Defendants' knowledge that their actions related to Plaintiff's Registered Work or otherwise are in direct contravention of Plaintiff's rights.

59.     Defendants have enjoyed and continue to enjoy financial gain and profit from the marketing and sales/fees of the goods and services that utilize Plaintiff's Registered Work.

60.     Defendants' use of Plaintiff's Registered Work is without the consent, license, or permission of Plaintiff.

61.     Plaintiff has been damaged the Defendants' acts of infringement and unauthorized access to Plaintiff's Registered Work.

62.     The acts of the Defendants have harmed and will continue to harm Plaintiff.

63.     Plaintiff has no adequate remedy at law.

**COUNT I**
**DIRECT COPYRIGHT INFRINGEMENT**
**OF PLAINTIFF'S REGISTERED WORK**
**[17 U.S.C. § 501(a)]**

**[Against All Defendants]**

64.     Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 64 as if fully set forth herein.

65.     With full knowledge and awareness of Plaintiff's ownership and property in Plaintiff's Registered Work, Defendants Sonny Meraban and S&P caused Defendants Silverlogic and Ryan Pineo to or conspired with Defendants Silverlogic and Ryan Pineo to willfully copy and make use of Plaintiff's Registered Work without authorization or permission from Plaintiff.

66.     S&P transferred claimed rights, or caused the transfer of claimed rights in copies of Plaintiff's Registered Work (via claiming rights in the Infringing Work) to Defendant AML, where AML is controlled by S&P, or, alternatively, an alter ego of S&P.

67.     Defendants S&P, Sonny Meraban, Silverlogic, Ryan Pineo, and AML, used Plaintiff's Registered Work without authorization or permission from Plaintiff for financial gain.

68.     Defendants S&P, Sonny Meraban, Ryan Pineo, and AML, used and continue to use Plaintiff's Registered Work without authorization or permission from Plaintiff for financial gain.

69.     All Defendants have directly infringed on the Plaintiff's Registered Work, have induced or contributed to the infringement, and/or vicariously infringed.

15

70.     The Defendants' acts constitute infringement, in violation of and pursuant to 17 U.S.C. § 501(a) and the Defendants' acts of infringement were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

71.     As a result of the foregoing, Defendants have violated the Plaintiff's exclusive rights with respect to Plaintiff's Registered Work, including without limitation, the right to use, copy, and/or distribute the work.

WHEREFORE, Plaintiff prays that the Court grant the relief requested in the Prayer for Relief below.

**COUNT II**
**DIRECT COPYRIGHT INFRINGEMENT**
**OF PLAINTIFF'S REGISTERED WORK**
**[17 U.S.C. § 501(a)]**

**[Against Defendant S&P]**

72.     Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 64 as if fully set forth herein.

73.     S&P had access to the Plaintiff's Registered Work by licensing Plaintiff's Registered Work from Plaintiff.

74.     S&P, without prior implicit or explicit authorization from Plaintiff copied Plaintiff's Registered Work through with the aid of other Defendants as set forth herein.

75.     S&P sold and/or licenses, and continues to sell and/or license copies of Plaintiff's Registered Work as the Infringing Work where the Infringing Work (and the user interface it produces) is substantially similar to Plaintiff's Registered Work.

76.     S&P's acts constitute infringement, in violation of and pursuant to 17 U.S.C. § 501(a) and S&P's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

77.     As a result of the foregoing, S&P has violated the Plaintiff's exclusive rights in Plaintiff's Registered Work, including without limitation, the right to use, copy, and/or distribute the work.

WHEREFORE, Plaintiff prays that the Court grant the relief requested in the Prayer for Relief below.

**COUNT III**
**DIRECT COPYRIGHT INFRINGEMENT**
**OF PLAINTIFF'S REGISTERED WORK**
**[17 U.S.C. § 501(a)]**

**[Against Defendant AML]**

78.     Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 64 as if fully set forth herein.

79.     Defendant AML is operating at the direction of at least Defendant S&P or, alternatively, is an alter ego of S&P.

80.     AML purported to take rights in a copy of Plaintiff's Registered Work from S&P or S&P caused AML to take purported rights in a copy of Plaintiff's Registered Work.

81.     AML sells and/or licenses copies of Plaintiff's Registered Work as the Infringing Work where the Infringing Work (and the user interface it produces) is substantially similar to Plaintiff's Registered Work.

82.    AML's acts constitute infringement, in violation of and pursuant to 17 U.S.C. § 501(a) and AML's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

83.    As a result of the foregoing, AML has violated the Plaintiff's exclusive rights in Plaintiff's Registered Work, including without limitation, the right to use, copy, and/or distribute the work.

WHEREFORE, Plaintiff prays that the Court grant the relief requested in the Prayer for Relief below.

## COUNT IV
## DIRECT COPYRIGHT INFRINGEMENT
## OF PLAINTIFF'S REGISTERED WORK
## [17 U.S.C. § 501(a)]

### [Against Defendant SilverLogic]

84.    Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 64 as if fully set forth herein.

85.    By and through the direction of S&P and/or Sonny Meraban, Silverlogic obtained access to Plaintiff's Registered Work.

86.    Silverlogic agreed to copy and clone Plaintiff's Registered Work for S&P and/or Sonny Meraban.

87.    To copy and clone Plaintiff's Registered Work, Silverlogic had to exceed the bounds of what would normally be accessible in the version of Plaintiff's Registered Work Plaintiff licensed to S&P, who then allowed SilverLogic to access Plaintiff's Registered Work.

18

88.     As such, Silverlogic copied and cloned Plaintiff's Registered Work through extraordinary means to access back-end programming of Plaintiff's Registered Work so as to copy and clone Plaintiff's Registered Work.

89.     Silverlogic unlawfully copied and cloned Plaintiff's Registered Work.

90.     Silverlogic produced the Infringing Work, which is an identical or substantially similar work to that of Plaintiff's Registered Work and allowed S&P and/or AML to claim rights in the identical or substantially similar work.

91.     SilverLogic's acts constitute infringement, in violation of and pursuant to 17 U.S.C. § 501(a) and SilverLogic's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

92.     As a result of the foregoing, SilverLogic has violated the Plaintiff's exclusive rights to Plaintiff's Registered Work, including without limitation, the right to use, copy, and/or distribute the work.

WHEREFORE, Plaintiff prays that the Court grant the relief requested in the Prayer for Relief below.

**COUNT V**
**DIRECT COPYRIGHT INFRINGEMENT**
**OF PLAINTIFF'S REGISTERED WORK**
**[17 U.S.C. § 501(a)]**

**[Against Defendant Ryan Pineo]**

93.     Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 64 as if fully set forth herein.

94.     By and through the direction of S&P and/or Sonny Meraban and while working at SilverLogic, Ryan Pineo obtained access to Plaintiff's registered work.

95.     Ryan Pineo agreed to copy and clone Plaintiff's registered work for S&P and/or Sonny Meraban on behalf of or through the direction of SilverLogic.

96.     To copy and clone Plaintiff's registered work, Ryan Pineo had to exceed the bounds of what would normally be accessible in the version of the registered work Plaintiff licensed to S&P, who then allowed Ryan Pineo to access the registered work.

97.     As such, Ryan Pineo copied and cloned Plaintiff's Registered Work through extraordinary means to access back-end programming of Plaintiff's Registered Work so as to copy and clone Plaintiff's Registered Work.

98.     Ryan Pineo unlawfully copied and cloned Plaintiff's Registered Work.

99.     Ryan Pineo produced the Infringing Work, which is an identical or substantially similar work to that of Plaintiff's Registered Work, enabling SilverLogic to allow S&P and/or AML to claim rights in the identical or substantially similar work.

100.    Ryan Pineo's acts constitute infringement, in violation of and pursuant to 17 U.S.C. § 501(a) and Ryan Pineo's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

101.    As a result of the foregoing, Ryan Pineo has violated the Plaintiff's exclusive rights in Plaintiff's Registered Work, including without limitation, the right to use, copy, and/or distribute the work.

WHEREFORE, Plaintiff prays that the Court grant the relief requested in the Prayer for Relief below.

**COUNT VI**
**CONTRIBUTORY COPYRIGHT INFRINGEMENT**
**OF PLAINTIFF'S REGISTERED WORK**
**[17 U.S.C. § 501]**

**[Against Defendant S&P]**

102.    Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 64 as if fully set forth herein.

103.    By causing Defendants Silverlogic and Ryan Pineo to, or conspiring with Defendants Silverlogic and Ryan Pineo to, willfully copy and make use of Plaintiff's Registered Work without authorization or permission from Plaintiff, S&P induced, caused, or materially contributed to the infringing conduct of the Plaintiff's Registered Work by others.

104.    Plaintiff's did not authorize, permit, or provide consent to S&P inducing, causing, or materially contributing to the infringing conduct of others.

105.    Through its conduct, S&P knowingly and intentionally induced, enticed, persuaded, and caused others to infringe Plaintiff's Registered Work in violation of Plaintiff's copyrights.

106.    Through its conduct, S&P knowingly and intentionally took steps that were substantially certain to result in the direct infringement of Plaintiff's Registered Work, and those steps resulted in such direct infringement in violation of Plaintiff's copyrights.

107.    Despite S&P's knowledge that Plaintiff's Registered Work was has continued to be property of Plaintiff and despite S&P's knowledge that it could not copy Plaintiff's Registered Work without authorization of Plaintiff, S&P has not taken reasonable steps to minimize the effects of its infringement, but instead has sold or licensed, or continues to sell and license the Infringing

Work, which is an unlawful  copy of Plaintiff's Registered Work to AML or others, holding the copy of Plaintiff's Registered Work out as S&P's own work.

108.    S&P is liable as contributory copyright infringers for the infringing acts of those it caused to infringe. S&P knowingly caused and otherwise materially contributed to unauthorized reproductions, sales, licenses, and/or distributions of Plaintiff's Registered Work.

109.    S&P's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

110.    As a result of the foregoing, the Defendant has caused or contributed to the violation of the Plaintiff's exclusive rights with respect to Plaintiff's Registered Work, including without limitation, the right to use, copy, and/or distribute the work.

WHEREFORE, Plaintiff prays that the Court grant the relief requested in the Prayer for Relief below.

## COUNT VII
## CONTRIBUTORY COPYRIGHT INFRINGEMENT
## OF PLAINTIFF'S REGISTERED WORK
## [17 U.S.C. § 501]

### [Against Defendant Sonny Meraban]

111.    Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 64 as if fully set forth herein.

112.    By causing Defendants Silverlogic and Ryan Pineo to or conspiring with Defendants Silverlogic and Ryan Pineo to willfully copy and make use of Plaintiff's Registered Work without authorization or permission from Plaintiff, Sonny Meraban induced, caused, or materially contributed to the infringing conduct of the Plaintiff's Registered Work by others.

113.    Plaintiff's did not authorize, permit, or provide consent to Sonny Meraban inducing, causing, or materially contributing to the infringing conduct of others.

114.    Through his conduct, Sonny Meraban knowingly and intentionally induced, enticed, persuaded, and caused others to infringe Plaintiff's Registered Work in violation of Plaintiff's copyrights.

115.    Through his conduct, Sonny Meraban knowingly and intentionally took steps that were substantially certain to result in the direct infringement of Plaintiff's Registered Work, and those steps resulted in such direct infringement in violation of Plaintiff's copyrights.

116.    Despite Sonny Meraban's knowledge that Plaintiff's Registered Work was has continued to be property of Plaintiff and despite Sonny Meraban's knowledge that it could not copy Plaintiff's Registered Work without authorization of Plaintiff, Sonny Meraban has not taken reasonable steps to minimize the effects of its infringement, but instead has sold or licensed, or continues to sell and license a copy of Plaintiff's Registered Work to AML or others, holding the copy of Plaintiff's Registered Work out as Sonny Meraban's own work.

117.    Sonny Meraban is liable as contributory copyright infringers for the infringing acts of those it caused to infringe. Sonny Meraban knowingly caused and otherwise materially contributed to unauthorized reproductions, sales, licenses, and/or distributions of Plaintiff's Registered Work.

118.    Sonny Meraban's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

119.     As a result of the foregoing, the Defendant has caused or contributed to the violation of the Plaintiff's exclusive rights in Plaintiff's Registered Work, including without limitation, the right to use, copy, and/or distribute the work.

WHEREFORE, Plaintiff prays that the Court grant the relief requested in the Prayer for Relief below.

**COUNT VIII**
**VICARIOUS COPYRIGHT INFRINGEMENT**
**OF PLAINTIFF'S REGISTERED WORK**
**[17 U.S.C. § 501]**

**[Against Defendant Sonny Meraban]**

120.     Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 64 as if fully set forth herein.

121.     Sonny Meraban is vicariously liable for the acts of S&P, SilverLogic, and Ryan Pineo.

122.     Sonny Meraban is vicariously liable for the acts of AML.

123.     Sonny Meraban had the right and ability to supervise and control the infringing activities of S&P, SilverLogic, and Ryan Pineo that led to S&P causing Defendants Silverlogic and Ryan Pineo to or conspiring with Defendants SilverLogic and Ryan Pineo to willfully copy and make use of Plaintiff's Registered Work without authorization or permission from Plaintiff.

124.     Instead of Sonny Meraban taking any meaningful action to prevent the infringement of Plaintiff's Registered Work by SilverLogic and Ryan Pineo, Sonny Meraban instead actively pursued the infringement through SilverLogic and Ryan Pineo.

125.     Sonny Meraban had the right and ability to supervise and control the infringing activities of S&P and AML when S&P allowed AML to purchase or license a copy of the

Plaintiff's Registered Work. Sonny Meraban also had the right and ability to prevent AML from selling and/or licensing a copy of the Plaintiff's Registered Work through Sonny Meraban's position of control over AML. Sonny Meraban took no action to prevent the infringement that stemmed actions of S&P and/or AML.

126.    Sonny Meraban is therefore vicariously liable for the unauthorized reproduction, distribution, sales, and licensing of Plaintiff's Registered Work.  Sonny Meraban is therefore liable for the infringing acts of S&P, AML, SilverLogic, and Ryan Pineo. Also, Sonny Meraban, at all relevant times, derived a direct financial benefit from the infringement of Plaintiff's Registered Work.

127.    As a result of the foregoing, the Defendant is liable for the violation of the Plaintiff's exclusive rights in Plaintiff's Registered Work, including without limitation, the right to use, copy, and/or distribute the work.

WHEREFORE, Plaintiff prays that the Court grant the relief requested in the Prayer for Relief below.

**COUNT IX**
**VICARIOUS COPYRIGHT INFRINGEMENT**
**OF PLAINTIFF'S REGISTERED WORK**
**[17 U.S.C. § 501]**

**[Against Defendant S&P]**

128.    Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 64 as if fully set forth herein.

129.    S&P is vicariously liable for the acts of SilverLogic, and Ryan Pineo.

130.    S&P is vicariously liable for the acts of AML.

25

131.     S&P had the right and ability to supervise and control the infringing activities of SilverLogic, and Ryan Pineo that led to S&P causing Defendants Silverlogic and Ryan Pineo to or conspiring with Defendants SilverLogic and Ryan Pineo to willfully copy and make use of Plaintiff's Registered Work without authorization or permission from Plaintiff.

132.     Instead of S&P taking any meaningful action to prevent the infringement of Plaintiff's Registered Work by SilverLogic and Ryan Pineo, S&P instead actively pursued the infringement through SilverLogic and Ryan Pineo.

133.     S&P had the right and ability to supervise and control the infringing activities of AML when S&P allowed AML to purchase or license a copy of the Plaintiff's Registered Work. S&P also had the right and ability to prevent AML from selling and/or licensing a copy of the Plaintiff's Registered Work as S&P is in a position of control over AML or AML is an alter ego of S&P. S&P took no action to prevent the infringement that stemmed actions of AML.

134.     S&P is therefore vicariously liable for the unauthorized reproduction, distribution, sales, and licensing of Plaintiff's Registered Work.  S&P is therefore liable for the infringing acts of AML, SilverLogic, and Ryan Pineo. Also, S&P, at all relevant times, derived a direct financial benefit from the infringement of Plaintiff's Registered Work.

135.     As a result of the foregoing, the Defendant is liable for the violation of the Plaintiff's exclusive rights in  Plaintiff's Registered Work, including without limitation, the right to use, copy, and/or distribute the work.

WHEREFORE, Plaintiff prays that the Court grant the relief requested in the Prayer for Relief below.

**COUNT X**
**TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP**
**UNDER FLORIDA COMMON LAW**

**[Against Defendants AML and S&P]**

136.     Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 64 as if fully set forth herein.

137.     At all times material hereto, Plaintiff had established, advantageous business relationships with licensees and/or operators of Bitcoin ATMs, including, but not limited to, HODL ATM, LLC and CRYTPOBASE LLC (the "Operators"), and did substantial business licensing Plaintiff's Bitcoin ATMs and associated proprietary software/computer code to the Operators. As a result of Plaintiff's existing business relationships with those Operators, Plaintiff's business relationships carried the probability of future economic benefit to Plaintiff.

138.     At all times material hereto, Defendants AML and S&P had knowledge of Plaintiff's business relationships with Operators.

139.     By engaging in the aforesaid acts and omissions, Defendants AML and S&P intentionally and unjustifiably interfered with those business relationships. The aforesaid acts were wrongful by some legal measure other than the interference itself, because those acts consisted of using improper and unlawful means or methods.

140.     Plaintiff has been damaged as a result of AML and S&P's interference.

WHEREFORE, Plaintiff requests that the Court grant the relief requested in the Prayer for Relief below.

## COUNT XI
## CIVIL CONSPIRACY
## UNDER FLORIDA COMMON LAW

### [Against All Defendants]

141.   Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 141 as if fully set forth herein.

142.   This count is for civil conspiracy against the named Defendants, where the underlying wrong is the unlawful actions of copyright infringement as mentioned above.

143.   Defendants each conspired and agreed, expressly and/or tacitly, to achieve the unlawful campaign to target Plaintiff, infringe on the Plaintiff's Registered Work, access, manipulate, and/or inspect Plaintiff's proprietary software/computer code on Plaintiff's Bitcoin ATMs (or on another protected computer), without Plaintiff's authorization, causing damage and loss to Plaintiff. This constituted the initial formation and beginning operations of the conspiracy, followed by the wrongful conduct in furtherance of the conspiracy alleged herein, and also set forth immediately below.

144.   As part of and in furtherance of this conspiratorial scheme, seizing upon their industry experience to increase customer revenue, Defendants committed numerous overt acts to infringe the Plaintiff's Registered Work and access, manipulate, and/or inspect Plaintiff's proprietary software/computer code without Plaintiff's authorization.

145.   Upon information and belief, Defendants began marketing, selling, and/or licensing Plaintiff's  Registered Work, and its associated features after accessing, manipulating, and/or inspecting Plaintiff's proprietary software/computer code without Plaintiff's authorization, so as to cease relying on Plaintiff as a provider and licensor of Plaintiff's Bitcoin ATMs and/or

proprietary software/computer code, and/or compete with Plaintiff as a seller and/or licensor of Plaintiff's proprietary software/computer code.

146.    Upon information and belief, Defendants acted with full knowledge of this civil conspiracy.

147.    Upon information and belief, Defendants have all profited and benefited from the agreed-upon conspiratorial scheme. Also, upon information and belief, Defendants have received monies generated by the conspiratorial scheme.

148.    Defendants profited and benefited from the agreed-upon conspiratorial scheme, as they have, upon information and belief, received an increased consumer/client base following upon infringing on the registered work (after accessing, manipulating, and/or inspecting Plaintiff's proprietary software/computer code without Plaintiff's authorization), increased revenues, increased marketplace presence, and an unfair/unlawful competitive advantage due to the acts as mentioned herein.

149.    By engaging in the aforesaid acts, the conspiring Defendants in this cause of action engaged in copyright infringement and engaged in the unlawful infringement using improper means or methods, and/or lawful acts by unlawful means.

150.    Plaintiff has been damaged as a result of Defendants' acts of civil conspiracy, as well as their underlying infringement.

WHEREFORE, Plaintiff prays that the Court grant the relief requested in the Prayer for Relief below.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays:

A.      That this Court will adjudge that the Plaintiff's registered work has been infringed as a direct and proximate result of the willful acts of Defendants, in violation of Plaintiff's rights under the Copyright Act of 1976, 17 U.S.C. §§ 501, 502, and 504.

B.      That this Court will adjudge that Defendants the Plaintiff has been harmed as a result of the Defendants' acts of tortious interference and civil conspiracy.

C.      That the Defendants, and all officers, directors, agents, servants, employees, attorneys, successors, and assigns, and all persons in active concert or participation therewith, be permanently enjoined and restrained:

1.   From using the Plaintiff's registered work, or any reproduction, infringement, copy, or derivative thereof.

2.   From counterfeiting or infringing the Plaintiff's registered work; and

3.   From doing any other act or thing likely to cause the public or the trade to believe that there is any connection between Defendant and Plaintiff, or their respective good or services; and

4.   From falsely representing themselves or their affiliates as being connected with Plaintiff, or sponsored by or associated with Plaintiff, or engaging in any act which is likely to falsely cause the trade, retailers, and/or members of the purchasing public to believe that Defendants are associated with Plaintiff and/or that Plaintiff is associated with Defendants or infringing upon any work of the Defendants concerning Plaintiff's Bitcoin ATMs and associated registered

work.

D.      That all Defendants be ordered to identify to Plaintiff all active and passive participants in the acts complained of herein and supply to Plaintiff a complete list of the persons and/or entities to whom Defendants distributed and/or sold any goods or services that use or otherwise infringe the Plaintiff's Registered Work, copies, or derivatives thereof, including without limitation any goods or services that were sold or rendered as a result of the Defendants' unauthorized access, manipulation, and/or inspection of Plaintiff's proprietary software/computer code.

E.      That Plaintiff recover Defendants' profits and the damages of Plaintiff arising from Defendants' acts of copyright infringement pursuant to 17 U.S.C. § 504.

F.      That the Plaintiff recover damages and equitable relief (including without limitation a disgorgement of profits) arising from Defendants' acts of tortious interference with a business relationship.

G.      That the Plaintiff recover damages and equitable relief (including without limitation a disgorgement of profits) arising from Defendants' acts of civil conspiracy.

H.      That Plaintiff have and recover nominal damages.

I.      That Plaintiff have and recover punitive damages in addition to its actual and/or nominal damages.

J.      That Plaintiff have and recover both pre-judgment and post-judgment interest on each and every damage award.

K.      That Plaintiff be entitled to injunctive relief as set forth in 17 U.S.C. § 502 and under Florida law.

L.      That Plaintiff have and recover its reasonable attorneys' fees incurred in this action.

M.      That Plaintiff have and recover such further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues triable of right by a jury.

Dated: January 31, 2024                          Respectfully submitted,

**W. John Eagan**
John Cyril Malloy III
Florida Bar No. 964220
jcmalloy@malloylaw.com
Peter A. Matos
Florida Bar No. 992879
pmatos@malloylaw.com
W. John Eagan
Florida Bar No. 105101
johneagan@malloylaw.com
Victor Bruzos
Florida Bar No. 1049014
vbruzos@malloylaw.com
MALLOY & MALLOY, P.L.
2800 S.W. Third Avenue
Miami, Florida 33129
Telephone (305) 858-8000
Facsimile (305) 858-0008

*Attorneys for Plaintiff*